IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON

| | |
|---|---|
| Sandra Funk | * |
| 8262 Lochard Rd. | Case No. 3:17-cv-260 |
| Sidney, Ohio 45365 | * |
| | Judge |
| Plaintiff, | * |
| | Magistrate Judge |
| v. | * |
| | **COMPLAINT** |
| Airstream, Inc. | * |
| 419 W. Pike St. | **JURY DEMAND ENDORSED HEREON** |
| Jackson Center, Ohio 45334 | * |
| | |
| Defendant. | * |

Now comes Plaintiff Sandra Funk ("Plaintiff"), through undersigned counsel, for her complaint against Airstream, Inc. ("Defendant" or "Airstream"), and hereby states as follows:

**I.     JURISDICTION AND VENUE**

1.     The jurisdiction of this Court is invoked pursuant to 28 U.S.C. § 1331 for violations of the Family and Medical Leave Act ("FMLA"), 29 U.S.C. § 2601, *et seq.* Plaintiff brings this action to obtain relief provided in the FMLA as a result of Defendant's discriminatory and retaliatory conduct towards her resulting in loss of wages, compensation, and benefits.

2.     Venue is proper in this forum pursuant to 28 U.S.C. §1391, as a substantial part of the events or omissions giving rise to her claims occurred in the Southern District of Ohio, Western Division, and Defendant has its principal place of business, and conducted substantial business in the Southern District of Ohio, Western Division.

**II.     PARTIES**

3.     Plaintiff Sandra Funk is a resident of Shelby County, Ohio. At all times relevant, Plaintiff was an "eligible employee" within the meaning of the FMLA, because she was employed by

Defendant other than in domestic service for at least twelve (12) months and for at least 1,250 hours of service during the twelve (12) months before she exercised her FMLA rights and was employed at a worksite where fifty (50) or more employees are employed within seventy-five (75) miles of that worksite. *See* also 29 C.F.R. § 825.110.

4. Defendant Airstream, Inc. is a foreign for-profit corporation authorized to do business in Ohio, and conducts business in this judicial district. At all times relevant hereto, Defendant has been an "employer" of Plaintiff as that term is defined in the FMLA because it is engaged in commerce or in any industry or activity affecting commerce that employs or employed at least fifty (50) or more employees at or within a 75-mile radius of the Plaintiff's worksite for each working day during each of 20 or more calendar workweeks in the year of or the calendar year preceding the events giving rise to this cause of action.

### III. STATEMENT OF FACTS

5. Plaintiff was employed by Defendant Airstream as a production worker from approximately June 2015 until June 28, 2017.

6. In or around March 2017, Plaintiff began suffering from severe pain and nausea, which caused her to be absent from work to seek a diagnosis and medical treatment with her primary care physician. Plaintiff was absent from work from approximately March 12, 2017 to April 10, 2017. During her continuous medical leave, her physician determined that Plaintiff was suffering from 2 ovarian cysts, causing her to be incapacitated during symptomatic episodes. Because the ovarian cysts constituted a serious health condition and Plaintiff was eligible for FMLA, Plaintiff was subsequently approved by Defendant for FMLA for her absences from March 12, 2017 through April 10, 2017.

7. Unfortunately, in or around the middle of May 2017, Plaintiff's symptomatic episodes returned, causing her to be absent from work and seek emergency medical treatment from May 16, 2017 through May 18, 2017.

8. Defendant was aware of the reasons for her absences because Plaintiff reported them to Defendant and explained that she suffered from the same symptoms related to her ovarian cysts that Defendant previously approved FMLA leave for during March 12, 2017 through April 10, 2017.

9. Additionally, Plaintiff reported her absences, the reason for her absences (i.e. due to pain related to her cysts), and her expected return to work date utilizing Defendant's "call-off" hotline with Defendant's HR department.

10. Upon her return to work on May 19, 2017, despite Plaintiff presenting Defendant with her doctor's excuses confirming her medical treatment, Defendant disciplined her with occurrence points due to the absences from May 16, 2017 through May 18, 2017.

11. On June 12, 2017, Plaintiff was absent from work again because she sought medical treatment with her primary care physician to ameliorate her symptoms related to her ovarian cysts.

12. The same day, Plaintiff reported her absences, explained the reason for her absence, and informed Defendant of her expected return to work date through Defendant's "call-off" hotline with its HR department.

13. Additionally, Plaintiff's primary care physician determined that her ovarian cysts had returned, which constitutes a serious health condition because, during symptomatic episodes, the cysts cause Plaintiff to be incapacitated on an intermittent basis, including but not limited to severe pain, vomiting, and severe nausea.

14. From June 12, 2017 through June 16, 2017, Plaintiff was absent from work due to symptomatic episodes associated with her serious health condition. During each absence during this period, Plaintiff informed Defendant, through the same "call-off" hotline described above, to report her absences, the reason for her absences, and her expected return to work date.

15. Additionally, Plaintiff subsequently turned in her doctor's excuses confirming her absences were related to her serious health condition.

16. On June 19, 2017, Plaintiff called Defendant's HR hotline and left a message requesting to be sent FMLA paperwork regarding her absences for the previous week, June 12 through June 16, 2017, because her absences were related to her serious health condition.

17. Despite Plaintiff's request, Plaintiff did not receive a response from Defendant as to whether any of her previous absences were FMLA-qualifying or not.

18. Instead, despite knowledge of Plaintiff's request for FMLA and that Plaintiff's absences were for her serious health condition, Defendant continued to assess her occurrence points for her absences from June 12 through June 16, 2017.

19. From June 19, 2017 through June 23, 2017, Plaintiff was again absent from work because of symptoms relating to her serious health condition. Plaintiff again informed Defendant of her absence through its "call-off" hotline as described above.

20. On June 26, 2017, Plaintiff was forced into the emergency room due to further symptomatic episodes associated with her serious health condition as described above.

21. That same day, Plaintiff received a call from Danielle Bunkey ("Danielle"), an HR generalist for Defendant, who demanded from Plaintiff medical documentation for Plaintiff's absences. During the call, Plaintiff informed her that she was in the emergency room due to her cysts that had been disclosed to Defendant.

22. On June 27, 2017, Plaintiff was still in the hospital due to symptomatic episodes that occurred the previous day. Plaintiff called into the HR Department hotline to report her absence.

23. Later that afternoon, Danielle called Plaintiff and told her that if she did not turn in her excused absences by the end of the day of June 27, 2017, she would be fired. During the call, Plaintiff informed Danielle that she was still recovering in the hospital, but that she would turn in the excused absences by the end of the day.

24. Plaintiff had her son drop off the excused absences from the hospital to Defendant in accordance with its demand.

25. On June 28, 2017, Plaintiff returned to work consistent with her physician's recommendation. After working for approximately 2 hours, she was called into a meeting with Joe Bumkin, Supervisor ("Bumkin"), Marion Slater, Production Manager ("Slater"), and Jeannie Lloyd, HR Manager ("Lloyd").

26. At the meeting, Defendant informed Plaintiff that she had "pointed out" and that she was terminated. Plaintiff pleaded with Defendant not to terminate her based on her absences related to her serious medical condition.

27. Defendant reluctantly provided Plaintiff with FMLA documentation at the termination meeting and informed Plaintiff that if she returned her FMLA documentation by the end of the day, Defendant would consider not terminating her.

28. That same day, Plaintiff visited her physician and had her physician's office fax over a completed FMLA certification to Defendant's HR Department, as well as Slater directly. The FMLA certification informed Defendant that Plaintiff's absences, at a minimum, from June 12, 2017 through June 27, 2017 were for her serious health condition.

29. Additionally, Plaintiff personally hand-delivered a copy to Defendant to be taken to Lloyd.

30. Despite Plaintiff submitting the FMLA certification the same day that she was given the FMLA documentation by Defendant, Defendant did not inquire further to determine whether her absences were FMLA-qualifying or not.

31. Instead, on July 12, 2017, Plaintiff received a termination letter, dated July 10, 2017, from Defendant.

32. In the letter, Defendant indicated the following as its reason to uphold Plaintiff's termination and deny her request for reinstatement:

> "Airstream has considered all the documentation given, the timeliness of your request for accommodation, and your overall attendance. While we made all effort to work with you, you have not provided a reasonable explanation **for not promptly requesting a medical leave**. As a result of this and your **documented previous attendance, your separation for attendance stands**."

33. As such, Defendant admits that it terminated Plaintiff because of her medical leave and absences related to her serious medical condition in violation of the FMLA. Defendant knowingly and willfully terminated Plaintiff in violation of the FMLA.

## IV. CAUSES OF ACTION

### COUNT I
### (29 U.S.C. § 2615, *et seq.* - FMLA Interference with Rights)

34. All of the preceding paragraphs are realleged as if fully rewritten herein.

35. At all times relevant, Plaintiff was an "eligible employee" as defined by 29 U.S.C. § 2611(2).

36. At all times relevant, Defendant is an "employer" as defined by 29 U.S.C. § 2611(4)(A).

37. Plaintiff's absences and requests for FMLA leave in May through June 2017 were either to seek a diagnosis or medical treatment for her 2 ovarian cysts, which constitutes a "serious health condition" as defined by 29 U.S.C. § 2611(11)(B).

38. Pursuant to 29 U.S.C. § 2615(a)(1), it is unlawful for an employer to interfere with an employee's right to exercise FMLA leave.

39. Plaintiff exercised her right to FMLA by taking leave in May through June 2017 and also submitted her request for intermittent FMLA leave.

40. Defendant was aware that Plaintiff's absences may be for one or more FMLA-qualifying reason because: (1) Plaintiff was previously approved of FMLA leave for the same serious health condition approximately one month before she suffered from the reappearance of her ovarian cysts; (2) Plaintiff reported her absences and reason for her absences to the HR hotline; (3) Plaintiff submitted her doctor's excuses for each absence; (4) Plaintiff requested FMLA leave; and (5) Plaintiff submitted a completed FMLA certification to Defendant.

41. Despite Plaintiff's extensive efforts to notify her employer that all of her absences were related to her serious health condition, Defendant did not notify her of her eligibility to take FMLA leave within five (5) business days.

42. Instead, it penalized Plaintiff for absences related to her serious health condition under its no-fault attendance policy, which interfered with Plaintiff's rights in violation of 29 C.F.R. § 825.220.

43. Defendant willfully and/or recklessly interfered with, restrained, and/or denied Plaintiff's rights in violation of the FMLA, by taking the following non-exhaustive list of actions: making disparaging remarks about Plaintiff's use of leave, disciplining her in the form of occurrence points, threatening to terminate Plaintiff, terminating Plaintiff's employment, and treating Plaintiff less favorably than similarly situated employees who did not exercise rights under the FMLA.

44. As a result of Defendant's interference, Plaintiff was harmed and she was unlawfully terminated while exercising her FMLA rights and denied benefits to which she is entitled under the FMLA.

45. Defendant lacked good faith to believe it had not violated the FMLA in their actions.

46. As a direct and proximate result of Defendant's actions, Plaintiff has suffered damages, including but not limited to lost wages and benefits as well as time and money in endeavoring to protect herself from Defendant, including costs and attorneys' fees in accordance with 29 U.S.C. § 2617(a).

## COUNT II
### (29 U.S.C. § 2615, *et seq.* – FMLA Retaliation)

47. All of the preceding paragraphs are realleged as if fully rewritten herein.

48. An employer is also prohibited from discriminating or retaliating against an employee who exercises a right under the FMLA. *See* 29 U.S.C. § 2615(a)(2).

49. During her employment, Plaintiff exercised her FMLA rights by requesting and taking intermittent medical leave, which constitutes a protected activity.

50. In addition, when Defendant disciplined Plaintiff for utilizing medical leave and threatened to terminate her, Plaintiff opposed being treated differently because of her use of FMLA leave by requesting that her absences relating to her serious health condition not be used as a negative factor in the terms of her employment.

51. Defendant knew of Plaintiff's preceding actions set forth above, all of which individually and/or collectively constitute a protected activity.

52. Defendant unlawfully retaliated against Plaintiff in violation of 29 U.S.C. § 2615(a)(2) for attempting to exercise or exercising her rights under the FMLA by taking the following non-exhaustive list of actions: making disparaging remarks about Plaintiff's use of leave, disciplining

her in the form of occurrence points, threatening to terminate Plaintiff, terminating Plaintiff's employment, and treating Plaintiff less favorably than similarly situated employees who did not exercise rights under the FMLA.

53. Defendant's proffered reasons for its retaliatory actions were merely pretextual.

54. Defendant willfully retaliated against Plaintiff's rights in violation of the FMLA.

55. Defendant lacked good faith to believe it had not violated the FMLA by its actions.

56. As a direct and proximate result of Defendant's actions, Plaintiff has suffered damages, including but not limited to lost wages and benefits as well as time and money in endeavoring to protect herself from Defendant, including costs and attorneys' fees in accordance with 26 U.S.C. § 2617(a).

## COUNT III
### (29 U.S.C. § 1161 - Violation of Comprehensive Omnibus Budget Reconciliation Act)

57. All of the preceding paragraphs are realleged as if fully rewritten herein.

58. Under the Consolidated Omnibus Budget Reconciliation Act ("COBRA"), an employer must provide a voluntarily terminated employee with notification of his or her right to receive continued health insurance benefits ("COBRA notification").

59. Plaintiff is a covered employee under COBRA.

60. Defendant is subject to the notice requirements of COBRA under 29 U.S.C. § 1161 because it employs twenty (20) or more employees.

61. COBRA, at U.S.C. § 1161, *et seq*, provides that an employer must give former employees the right to elect to temporarily continue health benefit coverage.

62. Pursuant to 29 U.S.C. § 1132, any administrator who fails to send timely COBRA notification is liable to the beneficiary for up to $110 per day from the date of such failure.

63. Plaintiff was terminated on June 28, 2017.

64. Since Plaintiff's termination on June 28, 2017, she has not received any notification of her right to receive continued health insurance benefits.

65. Had Plaintiff received notification in a timely manner, she would have considered exercising her rights to continued health insurance coverage given her serious medical condition as described herein.

66. Defendant had knowledge of Plaintiff's serious health condition and need for continuous health coverage to continue medical treatment.

67. As a result of Defendant's violation of COBRA, Plaintiff is entitled to recover damages in the amount of $110 per day from the date that Defendant violated COBRA to the date she receives notification of her COBRA rights, all medical expenses, her attorneys' fees and costs expended in bringing this action, and all other appropriate relief to be determined at trial.

## V. PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff demands back pay and benefits, reinstatement or front pay and benefits, and additional damages to be determined at trial, including but not limited to statutory damages, compensatory damages, liquidated damages, punitive damages, pre-judgment interest, post-judgment interest, costs, attorneys' fees, and all other relief the Court deems just and appropriate.

Respectfully submitted,

*/s/ Matthew J.P. Coffman*
Matthew J.P. Coffman (0085586)
**Coffman Legal, LLC**
1457 S. High St.
Columbus, Ohio 43207
Phone: 614-949-1181
Fax: 614-386-9964
Email: mcoffman@mcoffmanlegal.com

*/s/ Daniel I. Bryant*

>Daniel I. Bryant (0090859)
>**BRYANT LEGAL, LLC**
>1457 S. High St.
>Columbus, Ohio 43207
>Phone: (614) 704-0546
>Facsimile: (614) 573-9826
>Email: dbryant@bryantlegalllc.com
>
>*Attorneys for Plaintiff*

## JURY DEMAND

Plaintiff requests a trial by a jury of eight (8) persons.

>*/s/ Matthew J.P. Coffman*
>Matthew J.P. Coffman