**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION**

| | | |
|---|---|---|
| SANDRA FUNK | : | |
| PLAINTIFF, | : | Case No. 3:17-cv-260 |
| v. | : | Judge Walter H. Rice |
| AIRSTREAM, INC., et al. | : | Magistrate Judge Michael J. Newman |
| DEFENDANTS. | : | |

**RESPONSE OF DEFENDANTS AIRSTREAM, INC. AND THOR INDUSTRIES, INC. TO PLAINTIFFS' "EMERGENCY MOTION FOR A PROTECTIVE ORDER, CEASE AND DESIST ORDER, AND THE IMMEDIATE GRANTING OF PLAINTIFFS' MOTION FOR ISSUANCE OF NOTICE, ADDITIONAL NOTICE, CORRECTIVE ACTIONS, PRELIMINARY INJUNCTION, AND SANCTIONS" (ECF NO. 28)**

**I.     INTRODUCTION**

Defendant Airstream, Inc., recently issued checks to current and former employees for back payments owed as a result of its good faith, yet erroneous calculation of overtime compensation.  Plaintiff Sandra Funk and putative opt-in Plaintiff Mark Satterly filed a motion for "emergency relief," asking this Court to take extraordinary measures to enjoin Airstream's communication with the "putative class members" (who are, by and large, current Airstream employees) and to punish Airstream for making payments for back overtime by declaring those payments to be "gifts" rather than wages.  (ECF No. 28.)

On April 20, 2018, this Court convened a telephone conference, during which it heard arguments from Plaintiffs' counsel and the undersigned counsel.  This Court has set a telephonic hearing for tomorrow, April 25, 2018 at 9:15 AM, at which time the Court indicated it would render its decision on Plaintiff's "Emergency Motion."  The Court also allowed Defendants to

file a brief response to Plaintiff's Motion by 3:00 p.m. on April 24, 2018. It is with this backdrop that Defendants submit this response to the "Emergency Motion."

## II. LAW AND ARGUMENT

Notably, while a motion for conditional certification of a collective action under 29 U.S.C. § 216 is before this Court, this case is not yet certified as such. Generally speaking, in the pre-certification context, "a defendant does nothing wrong by communicating directly with someone who may become, but is not yet, a member of either a class for which certification is sought under Fed.R.Civ.P. 23 or an opt-in class under 29 U.S.C. §216(b)." *Zwerin v. 533 Short N., LLC*, No. 2:10-cv-488, 2011 U.S. Dist. LEXIS 65880, at \*4-5 (S.D. Ohio June 15, 2011) (citing *Longcrier v. HL-A Co., Inc.*, 595 F. Supp. 2d 1218, 1225-26 (S.D. Ala. 2008) and *Parks v. Eastwood Ins. Services, Inc.*, 235 F.Supp.2d 1082, 1085 (C.D. Cal.2002)).

In the class action context (whether Rule 23 or FLSA), a district court has broad authority to restrict communications with potential class members. *Zwerin*, at \*5. But this kind of order may issue only when there is a "'clear record and specific findings that reflect a weighing of the need for a limitation and the potential interference with the rights of the parties.'" *Zwerin*, at \*5 (citing *Gulf Oil Co v. Bernard*, 452 U.S. 89, 101 (1981)). "Although the *Bernard* Court did not expressly consider the impact of the First Amendment in this context, it did observe that this type of order is a prior restraint on communications and that any court asked to issue such an order should give 'attention to whether the restraint is justified by a likelihood of serious abuses.'" *Id.* at \*5-6 (quoting *Bernard*, 452 U.S. at 104).

Based on these principles, an employer's communication with its employees, even in the midst of an FLSA collective action, is lawful absent evidence of "coercive, misleading, or improper" conduct. *Snide v. Disc. Drug Mart, Inc.*, No. 1:11-cv-244, 2011 U.S. Dist. LEXIS

133736, at *27-28 (N.D. Ohio Oct. 7, 2011). "In order to prohibit such communication, a plaintiff must demonstrate that the defendant 'misrepresented facts about the lawsuit, discouraged participation in the suit, or undermined the class' confidence in, or cooperation with, class counsel." *Id.* at *27 (quoting *Kerce v. West Telemarketing Corp.*, 575 F.Supp.2d 1354, 1366-1367 (S.D. Ga. 2008)). When the employer's communication does not foreclose the employees' right to later join the FLSA action, the communication is not improper. *Id.* at *28; *see also Lewis v. The Huntington Natl Bank*, 789 F. Supp. 2d 863 (S.D. Ohio May 23, 2011).

### A. The Communications are not Misleading or Coercive.

Plaintiffs' "Emergency Motion" relies on the premise that the communications by Airstream Senior VP of Operations Mark Wahl to Airstream's employees are somehow coercive or improper. "As a general matter, courts have expressed concerns with at least two types of communications which might be made to potential class members—those containing misrepresentations, and those which may discourage persons from opting into the class." *Zwerin*, 2011 U.S. Dist. LEXIS 65880, at *4-7 (S.D. Ohio June 15, 2011); *see also Belt v. Emcare, Inc.*, 299 F.Supp.2d 664, 668 (E.D. Tex. 2003); *Dominguez v. Don Pedro Restaurant*, 2007 U.S. Dist. LEXIS 40787, 2007 WL 1650289 (N.D. Ind. June 1, 2007). Whatever the basis, Plaintiffs must show that Airstream's communication in this case is abusive and threatens the proper functioning of the litigation. *Zwerin* at *7 (citing *Ojieda-Sanchez v. Bland Farms*, 600 F. Supp. 2d 1373, 1378 (S.D. Ga. 2009)). Plaintiffs cannot show that here.

As this Court noted during Friday's telephonic hearing, the notices from Mr. Wahl to the recipients of the back overtime payments make no mention of this lawsuit, do not refer to Plaintiffs or their counsel, and do not indicate that the recipients of the payments are waiving any claims under the FLSA or any other law. (*See* ECF Nos. 28-2, Exhs. B-1 and B-2 to Pltfs.' Mot.)

3

Mr. Wahl's communications simply inform the employees that they are receiving checks for past overtime that was inadvertently miscalculated. Though Plaintiffs take issue with Airstream's position that the error described by Mr. Wahl was "inadvertent," Plaintiffs failed to explain logically in either their Motion or in Friday's telephonic hearing before the Court how the notices are coercive.[1]

Plaintiffs' counsel attempted to argue that the communications from Mr. Wahl would cast a "chilling effect" upon putative class members who may not opt-in to this collective action (if certified by the Court). But this Court correctly noted during Friday's telephone conference that the existence of a "chilling effect" is entirely speculative. *Lewis v. Huntington Nat'l Bank*, 789 F. Supp. 2d 863, 871 (S.D. Ohio 2011) (Marbley, J.) (finding no impropriety in the employer's payment of back overtime wages accompanied by an "acknowledgment" to be signed by the employee, when the acknowledgment "never even mentions the litigation, much less provides false or misleading information about it"). Indeed, Plaintiffs offered no evidence of any "chilling effect" as they have no declarations from any putative class members that describe any "chilling" communications that have come from Airstream. Plaintiffs instead offer self-serving Declarations from Funk and Satterly, both of which are riddled with hearsay and speculation about what Airstream employees have been told.

---

[1] Plaintiffs' complaining about Airstream's communications with employees is ironic given that their counsel has been active in the print media and social media, promoting this collective action. *See* http://www.sidneydailynews.com/news/102790/sidney-woman-files-labor-violations-suit-against-airstream-thor-industries (Sidney Daily News) and http://mcoffmanlegal.com/blog/collective-and-class-actions/non-exempt-hourly-employee-challenges-thor-industries-airstreams-failure-pay-wages-due-working-overtime/ (blog post). The latter presents a particularly ironic juxtaposition: Plaintiffs complain in their "Emergency Motion" about Airstream's communications being somehow misleading (despite not mentioning the lawsuit whatsoever), yet the blog post of Plaintiffs' counsel represents to the public that Thor Industries has somehow violated the FLSA when Plaintiffs have merely alleged (and not proven) that Thor Industries (Airstream's parent company) was Plaintiffs' joint employer.

### B. *Lewis* does not support Plaintiff's requested "emergency" relief.

Plaintiffs cite *Lewis v. Huntington Natl. Bank*, *supra*, throughout their "Emergency Motion" as a principal (if not *the* principal) authority supporting the relief they seek. (ECF No. 28, at PageID# 222-224, 226-227.)  *Lewis*, however, cuts against Plaintiffs' requested extraordinary relief, not in favor of it.

In *Lewis*, the plaintiffs commenced an FLSA suit.  While the conditional certification motion was pending, Defendant Huntington Bank paid employees back overtime.  *Lewis*, 789 F. Supp. 2d at 866.  Upon payment of the back overtime wages, Huntington also asked them to sign "Acknowledgment of Back Wage Payment" forms, which stated that the employee "agreed that he 'disclosed to the Bank all hours that [he] ha[s] worked, including overtime,' and that the 'overtime pay calculation is accurate, and there are no additional wages or payments due to [him].'" *Id.*  Like Plaintiffs in this case, the *Lewis* plaintiffs argued that Huntington Bank's voluntary payment of overtime back wages and the accompanying "acknowledgment" were "misleading and coercive." *Id.* at 868.  Similarly to the relief the Plaintiffs seek here, the *Lewis* plaintiffs sought, among other things, (1) a declaration that the acknowledgments were void, (2) a remedial notice, and (3) restrictions on the employer's communications with its employees. *Id.* at 869.

The court largely denied the plaintiffs' requested relief.  Significant to the motion now before this Court, the *Lewis* court refused to find the written communications there to be "coercive."  Just as with Airstream in this case, Huntington did not take the position that the employees who received payments and signed acknowledgments in *Lewis* waived their rights to join the lawsuit or released their FLSA claims in any way.  Accordingly, there was nothing coercive about the communications.  The situation in Airstream's case here is even *less*

5

coercive—unlike Huntington, Airstream made back overtime payments to employees without making them sign any acknowledgment whatsoever. And Airstream does not take the position that the employees' receipt and/or acceptance of the back overtime payments somehow constitute a waiver or release of claims. While the payments conceivably affect the recoverable damages in a collective action, none of the recipients has waived the right to join this lawsuit (if certified as a collective action) and pursue additional remedies.

The *Lewis* court also declined to limit communications in as wide a swath as Plaintiffs want here. Because the acknowledgment in *Lewis* (like Mr. Wahl's communication to Airstream employees in this case) "was not so misleading, coercive, or improperly aimed at undermining the class," Judge Marbley declined to broadly limit the employer's communications with its employees. *Lewis*, 789 F. Supp. 2d at 871. The same rationale applies here. And as this Court noted during Friday's telephone conference, any conceivable concern that Plaintiffs' counsel has raised about Mr. Wahl's innocuous notice can be alleviated by appropriate language in the notice issued to opt-in Plaintiffs, should the Court grant the motion for conditional certification. Thus, Plaintiffs cannot rely on *Lewis* as a basis for the relief they seek.

Finally, it is true that in *Lewis*, Judge Marbley ordered Huntington to cease *some* communications. But even that passage does not help Plaintiffs here. Judge Marbley issued that part of his order based upon a separate set of allegations in which three opt-in plaintiffs alleged (via sworn affidavit) that they had been harassed or otherwise retaliated against for joining the *Lewis* lawsuit. But this branch of the *Lewis* decision is of no help to Plaintiffs here, as there is no evidence of any harassment or retaliation against putative class members. Plaintiffs' evidence consists solely of hearsay declarations from Plaintiffs Funk and Satterly, in which both Plaintiffs speculate about what Airstream *may* have told their employees. Without any actual evidence of

6

improper communications with the putative class, Plaintiffs have established no basis for the extraordinary relief they seek.

### C. There is no authority for the proposition that payments are a "gift."

Plaintiffs also ask this Court for a declaration that all of Airstream's payments of back overtime wages are "gifts" rather than payment of wages. Thus, Plaintiffs are essentially asking this Court to declare that Airstream has forfeited the monies paid for back overtime and that Airstream may still be liable for those amounts even though it has paid them.

Though Plaintiffs rely on the "broad authority" this Court has to exercise control over a collective action, Plaintiffs have conspicuously failed to cite any case or statutory authority (in the FLSA context or otherwise) that would authorize a court to change the nature of an employer's payment from "wages" to "gift." Absent a specific grant of authority in this regard, no such order should issue when changing the nature of the payment could have significant tax consequences on both the payor and the payees.

## III. CONCLUSION

Airstream's communication with its employees has in no way undermined the putative collective action that Plaintiff seeks to certify. The checks sent to putative class members were not conditioned upon the execution of a settlement agreement or release. Nor did Mr. Wahl's notice to the employees indicate that the receipt of the checks was conditioned upon the execution of a settlement agreement or release. Accordingly, if an Airstream or former Airstream employee who received a check for back overtime otherwise fits within the parameters of the putative class, these persons could still join the collective action (assuming this Court conditionally certifies it).

7

Nor are the purposes of the FLSA or the collective action process frustrated by what Airstream has done here. To the contrary, the purposes of the FLSA would be frustrated by Plaintiff's proposed relief. Under Plaintiff's view, the only way the putative class members should be able to receive compensation for past wages is through this lawsuit and by no other means. Plaintiffs' requested relief works to the detriment of the putative class they seek to represent, not in favor of it. Plaintiffs' "Emergency Motion" should be denied.

Respectfully submitted,

DINSMORE & SHOHL LLP

*/s/ Vladimir P. Belo*
Karen S. Hockstad (0061308)
Vladimir P. Belo (0071334)
karen.hockstad@dinsmore.com
vladimir.belo@dinsmore.com
191 W. Nationwide Blvd., Suite 300
Columbus, Ohio 43215
P. 614.628.6880
F. 614.628.6890

*Attorneys for Defendants*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and accurate copy of the foregoing was electronically filed with the Clerk of Court using the CM/ECF system, which will send notification of such filing to all counsel of record, on April 24, 2018.

*/s/ Vladimir P. Belo*
Vladimir P. Belo

12722866v2