IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

SANDRA FUNK, on behalf of
herself and others similarly
situated,

  Plaintiff,

  v.

AIRSTREAM, INC., *et al.*,

  Defendants.

:
:
:
:
:

Case No. 3:17-cv-260

JUDGE WALTER H. RICE

---

DECISION AND ENTRY OVERRULING PLAINTIFF'S EMERGENCY MOTION FOR A PROTECTIVE ORDER, CEASE AND DESIST ORDER, AND THE IMMEDIATE GRANTING OF PLAINTIFF'S MOTION FOR ISSUANCE OF NOTICE, ADDITIONAL NOTICE, CORRECTIVE ACTIONS, PRELIMINARY INJUNCTION, AND SANCTIONS (DOC. #28); SUSTAINING PLAINTIFF'S PRE-DISCOVERY MOTION FOR CONDITIONAL CLASS CERTIFICATION AND COURT-SUPERVISED NOTICE TO POTENTIAL OPT-IN PLAINTIFFS PURSUANT TO 29 U.S.C. § 216(b) (DOC. #17); DEFENDANTS TO PROVIDE CONTACT INFORMATION FOR POTENTIAL OPT-IN PLAINTIFFS WITHIN 14 DAYS

---

Plaintiff Sandra Funk, on behalf of herself and others similarly situated, filed suit against her former employer, Airstream, Inc., and its parent company, Thor Industries, Inc., alleging violations of the Fair Labor Standards Act of 1938 ("FLSA"), 29 U.S.C. § 201 *et seq.*, the Ohio Minimum Fair Wage Standards Act, ("OMFWSA"), Ohio Rev. Code §§ 4111.03 and 4111.08, and the Ohio Prompt Pay Act ("OPPA"), Ohio Rev. Code § 4113.15.

This matter is currently before the Court on two pending motions: (1) Plaintiff's Pre-Discovery Motion for Conditional Class Certification and Court-Supervised Notice to Potential Opt-in Plaintiffs Pursuant to 29 U.S.C. § 216(b), Doc. #17; and (2) Plaintiff's Emergency Motion for a Protective Order, Cease and Desist Order, and the Immediate Granting of Plaintiff's Motion for Issuance of Notice, Additional Notice, Corrective Actions, Preliminary Injunction, and Sanctions, Doc. #28.

I.  **Background and Procedural History**

Sandra Funk was a production worker at Airstream, Inc., from June of 2015 until June of 2017. As a non-exempt employee, compensated on an hourly basis, she was entitled to compensation equal to one and one-half times her regular rate of pay for each hour worked in excess of forty hours per week. 29 U.S.C. §207(a)(1). The "regular rate" is deemed to include "all remuneration for employment," including certain nondiscretionary bonuses. 29 U.S.C. § 207(e).

Airstream paid its employees nondiscretionary attendance bonuses. It also paid nondiscretionary pool production bonuses for meeting production goals. Funk alleges that because Airstream failed to include these bonuses when calculating her regular rate of pay, the overtime rate that she was paid fell short of what was required. She filed suit on behalf of herself and others similarly situated, alleging violations of federal and state wage laws. Her First Amended Collective and Class

Action Complaint, Doc. #16, alleges violations of the FLSA, the OMFWSA and the OPPA.[1]

On March 6, 2018, Funk filed a Motion for Conditional Class Certification and Court-Supervised Notice to Potential Opt-in Plaintiffs Pursuant to 29 U.S.C. § 216(b). Doc. #17. She asked the Court to conditionally certify a collective FLSA action consisting of "[a]ll current and former hourly, non-exempt employees of Defendants, who received any additional form of remuneration during any workweek that they worked over 40 hours in any workweek beginning March 1, 2015 and continuing through the date of final disposition of this case." She also asked the Court to approve a Notice to be sent to potential opt-in plaintiffs, and to order Defendants to identify all potential opt-in plaintiffs.

After Defendants filed their Response to Funk's Motion for Conditional Class Certification, Doc. #27, Plaintiff filed an Emergency Motion for a Protective Order, Cease and Desist Order, and the Immediate Granting of Plaintiff's Motion for Issuance of Notice, Additional Notice, Corrective Actions, Preliminary Injunction, and Sanctions, Doc. #28. This prompted several conference calls, held on April 20, 2018, April 26, 2018, and May 4, 2018.

Both motions are now fully briefed. Although the Court issued oral rulings on these motions during the May 4, 2018, conference call, it sets forth its

---

[1] Funk also asserts two individual causes of action for violations of the Family and Medical Leave Act and the Comprehensive Omnibus Reconciliation Act. These claims are not relevant to the pending motions.

3

reasoning in greater detail below. The Court turns first to Plaintiff's Emergency Motion.

II.  **Plaintiff's Emergency Motion for a Protective Order, Cease and Desist Order, and the Immediate Granting of Plaintiff's Motion for Issuance of Notice, Additional Notice, Corrective Actions, Preliminary Injunction and Sanctions (Doc. #28)**

After the Motion for Conditional Certification was filed, Airstream's Senior Vice President of Operations, Mark Wahl, sent two letters to putative class members stating that, in the process of implementing its new payroll system, Airstream had discovered an "inadvertent payroll error" in calculations of overtime pay. Employees were given money to remedy this error. Doc. #28-2, PageID##241, 243. Plaintiff maintains that Wahl's preemptive letters were coercive, deceptive and prejudicial in that they failed to mention the pending lawsuit and failed to inform the putative class members of their statutory rights.

Sandra Funk and fellow former Airstream employee, Mark Satterly, further allege that Airstream told putative class members that the lawsuit was a scam and that they should not fall for it. Putative class members believed that if they joined the lawsuit, they would be retaliated against. Plaintiff is also concerned that putative class members will be confused about whether, in accepting the overtime payments, they have waived any right to participate in the lawsuit. She worries that they may believe that they have already been fully compensated for their damages when, in fact, they have not.

4

Plaintiff requests that the Court: (1) issue a preliminary injunction enjoining Defendants from communicating with putative class members about the lawsuit until the Court rules on the class certification motion after the opt-in period and discovery have ended; (2) deem the payments already made to putative class members to be "gifts" instead of back wages; (3) sustain the Motion for Conditional Certification; (4) order Mark Wahl to send two additional letters to putative class members to correct any misunderstandings; (5) order that the Notice of Collective Action be sent two weeks after Wahl's first letter; and (6) order Defendants to conspicuously post the Notice of Collective Action in Airstream's facilities.

Defendants deny that Mark Wahl's letters were deceptive, coercive or misleading. They maintain that they did nothing wrong in taking steps to correct the payroll error once it was discovered. The employees were not asked to waive any legal rights in exchange for the payments. Moreover, the letters say nothing about the lawsuit. With respect to Plaintiff's allegation that Airstream's conduct has a chilling effect on the putative class members' willingness to participate in the lawsuit, Defendants note that the Declarations submitted by Funk and Satterly are largely speculative and are based on hearsay. The Court gave Plaintiff the opportunity to submit, for an *in camera* review, more detailed statements about who said what and to whom. Plaintiff did so.

Having reviewed those submissions and considered the arguments of counsel, the Court OVERRULES Plaintiff's Emergency Motion for a Protective

Order, Cease and Desist Order, and the Immediate Granting of Plaintiff's Motion for Issuance of Notice, Additional Notice, Corrective Actions, Preliminary Injunction, and Sanctions, Doc. #28.

Although the Court has "broad authority" to enter "appropriate orders governing the conduct of counsel and the parties" in order to stem abuses in a collective action, *Hoffman-LaRoche Inc. v. Sperling*, 493 U.S. 165, 171 (1989), the Court finds that Plaintiff has failed to establish that the remedies she requested are warranted. As discussed during the conference calls, the Court has no authority to deem the payments made by Airstream to be "gifts" instead of back wages.

Although Mark Wahl's statement, that the payroll error was discovered while implementing a new payroll system, may be somewhat disingenuous, it is largely immaterial. There is no indication, at this point, that the underpayments were anything other than inadvertent errors, and nothing prevents an employer from taking action to correct such an error once it is discovered. True, Wahl's letters make no mention of the lawsuit; however, this is hardly surprising, given that the Court had not yet conditionally certified the class. Class members were not asked to waive their right to join the lawsuit in exchange for accepting the payments. In the Court's view, because the letters are not deceptive or coercive, it would be improper to order Wahl to send the "corrective" letters that Plaintiff has proposed.

With respect to Plaintiff's allegation that Airstream is actively discouraging putative class members from joining the lawsuit and is threatening retaliation if

6

they do join, the Court concludes that Plaintiff has failed to put forth sufficient, credible evidence to support this claim. As the Supreme Court held in *Gulf Oil Co. v. Bernard*, 452 U.S. 89, 101 (1981), an order limiting communication between the parties and putative class members "should be based on a clear record and specific findings that reflect a weighing of the need for a limitation and the potential interference with the rights of the parties."

Having reviewed Plaintiff's submissions *in camera*, the Court finds that rumors about the merits of the lawsuit do appear to be circulating among the Airstream employees, and some employees do appear to fear retaliation if they join the lawsuit. Nevertheless, the basis for these beliefs remains unclear. Plaintiff has offered only vague statements that "upper management" has said that the lawsuit is a flop and has told employees that there is no need to join it because Airstream will be giving them the money that is owed. Again, it is still unclear exactly who made the alleged statements, to whom, or in what context.

Based on the current record, the Court finds no justification at this time for restricting Airstream's communications with putative class members. However, as the Court noted during the May 4, 2018, conference call, Defendants are cautioned that conduct aimed at discouraging putative class members from participating in this lawsuit will not be tolerated and may be subject to sanctions.

III. Plaintiff's Motion for Conditional Class Certification (Doc. #17)

A. Relevant Law

The FLSA requires covered employers to pay non-exempt employees not less than minimum wage for each hour worked, and one and one-half times the employee's "regular rate" of pay for each hour worked in excess of forty hours per week. 29 U.S.C. §§ 206-207. Employers who violate these provisions are liable for the unpaid wages, plus an additional amount as liquidated damages, reasonable attorneys' fees and costs. 29 U.S.C. § 216(b).

Under the FLSA, a collective action may be filed by one or more employees on behalf of themselves and other "similarly situated" employees. *Id.* However, unlike a typical class action lawsuit, "[n]o employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought." *Id.*

The certification process in an FLSA collective action typically proceeds in two phases. Because the statute of limitations on an FLSA claim continues to run until written consent is filed with the court, it is important that notice of the collective action be given to all potential opt-in plaintiffs as soon as practicable so they can decide whether to participate in the lawsuit. *Lewis v. Huntington Nat'l Bank*, 789 F. Supp. 2d 863, 867 (S.D. Ohio 2011).

Before authorizing the plaintiffs to send the notice, however, the court must first determine whether they have shown "that the employees to be notified are, in fact 'similarly situated.'" *Comer v. Wal-Mart Stores, Inc.*, 454 F.3d 544, 546 (6th

8

Cir. 2006). Because this determination is generally made before discovery is conducted, plaintiffs need make only a "modest showing" at this initial stage of the litigation. *Lewis*, 789 F. Supp. 2d at 867. Employees are considered to be "similarly situated" if their "causes of action accrued in approximately the same manner as those of the named plaintiffs." *Id.* at 868. The Sixth Circuit has held that employees are similarly situated "when they suffer from a single, FLSA-violating policy, and when proof of that policy or of conduct in conformity with that policy proves a violation as to all the plaintiffs." *O'Brien v. Ed Donnelly Enters., Inc.*, 575 F.3d 567, 584 (6th Cir. 2009), *abrogated on other grounds by Campbell-Ewald Co. v. Gomez*, 136 S. Ct. 663 (2016).

As the court noted in *Comer*, application of this "fairly lenient standard . . . typically results in conditional certification." 454 F.3d at 547. Factors to be considered include: "whether potential plaintiffs were identified; whether affidavits of potential plaintiffs were submitted; whether evidence of a widespread discriminatory plan was submitted, and whether as a matter of sound class management, a manageable class exists." *Lewis*, 789 F. Supp. 2d at 868 (quotations and citations omitted).

Once a court determines that the potential opt-in plaintiffs are "similarly situated" to the named plaintiffs, notice is sent, opt-in forms are filed and discovery takes place. At the second stage of the certification process, the defendant may file a motion to decertify the class. At that point, the court

with greater scrutiny, the question of whether the class members are, in fact, similarly situated. *Comer*, 454 F.3d at 547.

**B.     Analysis**

Plaintiff named both Airstream, Inc. and its parent company, Thor Industries, Inc. ("Thor"), as defendants in this case. In the First Amended Collective Action Complaint, Plaintiff alleges that Airstream and Thor are liable as "joint employers." Plaintiff initially asked that the Court conditionally certify a class consisting of employees of both Defendants. Defendants, however, deny that Thor is a "joint employer." Plaintiff now concedes that this is a fact-intensive determination better resolved after discovery. Accordingly, Plaintiff has agreed to modify the class to consist of the following:

> All current and former hourly, non-exempt employees of Defendants, who were paid by Airstream, Inc. and received any additional form of remuneration during any workweek that they worked over 40 hours in any workweek beginning March 1, 2015 and continuing through the date of final disposition of this case.

In support of her Motion for Conditional Class Certification, Funk has submitted five paystubs showing that her nondiscretionary bonuses were not included in her regular rate of pay for purposes of overtime. Doc. #17-1, PageID##136-140. In her Declaration, she further states that Airstream calculated the overtime rates of other non-exempt employees in a similar fashion and, in her estimate, "hundreds, if not thousands," of these employees were therefore undercompensated.

10

In addition, Funk has submitted the Declaration of Mark Satterly, another individual who was employed as an hourly, non-exempt employee at Airstream from February of 2016 through August of 2016. Like Funk, Satterly states that his nondiscretionary bonuses were not included in his regular rate of pay for purposes of overtime compensation, nor were those of "hundreds, if not thousands," of other non-exempt employees. Doc. #26-1, PageID#188. Satterly further states that "[b]ased on my experience and conversations with employees throughout my employment, Defendants had a common company-wide policy of not paying me and other similarly situated production workers one and one-half times our regular rate of pay for hours worked in excess of forty (40) in a workweek. Defendants improperly excluded our additional remuneration from calculations of our regular rates of pay for overtime." *Id.* at PageID#189.

Although Plaintiff has submitted the declarations of only two employees, these allegations nevertheless give rise to a common theory of liability. Mark Wahl's letters to other putative class members concerning the "inadvertent payroll error" give further credence to the view that this was a company-wide problem that affected many employees.

Defendants do not dispute that, as to Airstream, Funk has satisfied her modest burden at the initial stage of the inquiry. Based on the evidence presented at this initial stage of the proceedings, the Court finds that Plaintiff has shown that the employees to be notified are "similarly situated" in that Airstream had a company-wide policy of improperly excluding nondiscretionary bonuses in

11

calculating the regular rate of pay for purposes of determining employees' overtime compensation. Moreover, it appears to the Court that a manageable class exists.

For the reasons set forth above, the Court SUSTAINS Plaintiff's Motion for Conditional Class Certification, Doc. #17, and conditionally certifies a collective FLSA class consisting of:

> All current and former hourly, non-exempt employees of Defendants, who were paid by Airstream, Inc., and received any additional form of remuneration during any workweek that they worked over 40 hours in any workweek beginning March 1, 2015, and continuing through the date of final disposition of this case.

### C. Identification of Potential Opt-in Plaintiffs

Defendants, within 14 days of the date of this Decision and Entry, shall provide to Plaintiff's counsel a list, in electronic and importable format, of the names, job titles, last known addresses, telephone numbers, e-mail addresses, and dates of employment, of all potential opt-in plaintiffs who worked for Defendants at any time from three years preceding the filing of Plaintiff's Motion through the present.

### D. Court-Supervised Notice/Opt-in Period

Plaintiff has also asked the Court to approve the form and method of her proposed Notice of Collective Action Lawsuit, Doc. #17-2, PageID##142-45. She would like to send this Notice, along with the "Consent to Join" form, Doc. #17-3, PageID#147, to all potential opt-in plaintiffs via regular United States mail and e-mail. In addition, she asks the Court to authorize her to send a "reminder notice,"

Doc. #17-4, PageID#149, by e-mail only, halfway through the 90-day opt-in period.

Defendants have raised several objections to the proposed Notice of Collective Action Lawsuit. During the May 4, 2018, conference call, the Court directed counsel to attempt to resolve their differences, and to submit a Joint Revised Notice for the Court's review. The parties have done so, and it appears that they have resolved all but one issue, which will be discussed during the follow-up conference call scheduled for Wednesday, May 16, 2018, at 3:30 p.m.

Date: May 16, 2018

WALTER H. RICE
UNITED STATES DISTRICT JUDGE