IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| SANDRA FUNK, *et al.*, | : |
| Plaintiffs, | |
| v. | :    Case No. 3:17-cv-260 |
| AIRSTREAM, INC., | :    JUDGE WALTER H. RICE |
| Defendant. | : |

---

DECISION AND ENTRY SUSTAINING IN PART AND OVERRULING IN PART PLAINTIFFS' COUNSELS' MOTION FOR AN AWARD OF ATTORNEYS' FEES AND REIMBURSEMENT OF COSTS (DOC. #69); AWARDING PLAINTIFFS' COUNSEL $164,927.50 IN ATTORNEYS' FEES AND $6,735.51 IN COSTS, FOR A TOTAL AWARD OF $171,663.01; JUDGMENT TO ENTER ACCORDINGLY

---

This matter is currently before the Court on Plaintiffs' Counsels' Motion for an Award of Attorneys' Fees and Reimbursement of Costs. Doc. #69. Plaintiffs seek $165,552.50 in attorneys' fees and $6,735.51 in costs and expenses, a total of $172,288.01. For the reasons set forth below, Plaintiffs' motion is SUSTAINED IN PART and OVERRULED IN PART.

I.    **Background and Procedural History**

In August of 2017, Plaintiff Sandra Funk filed suit against her former employer, Airstream, Inc., alleging violations of the Family and Medical Leave Act ("FMLA"), 29 U.S.C. § 2615, and the Comprehensive Omnibus Budget

Reconciliation Act ("COBRA"), 29 U.S.C. § 1161. Doc. #1. On March 1, 2018, Funk filed a First Amended Collective and Class Action Complaint for Violations of the Fair Labor Standards Act ("FLSA") and Ohio Law. Doc #16. Collective and class claims, asserted in Counts 1-3, included unpaid overtime claims under the FLSA and Ohio Revised Code § 4111.03, and violations of Ohio Revised Code § 4113.15, the Ohio Prompt Pay Act. Individual claims, asserted in Counts 4-6, alleged FMLA interference and retaliation, and a COBRA violation.

On March 6, 2018, Funk filed her Pre-Discovery Motion for Conditional Class Certification and Court-Supervised Notice to Potential Opt-In Plaintiffs Pursuant to 29 U.S.C. § 216(b). Doc. #17. Two days later, Mark Wahl, Airstream's Senior Vice President of Operations, sent a seemingly preemptive letter to the putative class members. Citing an "inadvertent payroll error committed in the calculation of the overtime pay," he notified the putative class members that they would be receiving an additional amount in their paychecks. Doc. #28-2, PageID#241. On April 12, 2018, Wahl sent another letter indicating that additional checks would be forthcoming. Doc. #28-2, PageID#243.

In response, on April 19, 2018, Funk filed an Emergency Motion for a Protective Order, Cease and Desist Order, and the Immediate Granting of Plaintiffs' Motion for Issuance of Notice, Additional Notice, Corrective Actions, Preliminary Injunction, and Sanctions. Doc. #28. Therein, Funk accused Airstream of sending deceptive, coercive, and misleading communications to its employees, the putative class members, to discourage them from joining the lawsuit.

2

The Court held a series of conference calls. On May 16, 2018, the Court overruled Plaintiffs' Emergency Motion, but sustained Plaintiffs' Motion for Conditional Class Certification. Doc. #38. Notice was then sent to 1,041 putative class members, but only twenty opted to join Funk in the lawsuit.

On January 25, 2019, Airstream made an Offer of Judgment under Rule 68 of the Federal Rules of Civil Procedure. Plaintiffs accepted the Offer of Judgment on January 30, 2019, having taken the 30(b)(6) depositions of Airstream representatives Mark Leksan and Jeannie Lloyd earlier that day. Doc. #64. The Offer of Judgment provided Plaintiffs with $21,338.00 for the collective and class claims asserted in Counts 1-3, and provided Sandra Funk with $117,053.00 for her individual claims asserted in Counts 4-6. Airstream agreed "to pay Plaintiffs' reasonable costs and attorneys' fees as required by [the FLSA and FMLA] accrued as of the date of the acceptance of [the] offer." Said fees and costs were to be "in an amount agreed upon by the parties, or if they are unable to agree, as determined by the Court upon application by Plaintiffs or Plaintiffs' counsel." *Id.*

Not surprisingly, the parties conferred, but were unable to agree. Thereafter, Plaintiffs' counsel filed their Motion for an Award of Attorneys' Fees and Reimbursement of Costs. Doc. #69. That motion is now fully briefed and ripe for decision.

II.  **Relevant Law**

The FLSA has a fee-shifting provision whereby the defendant must pay "a reasonable attorney's fee" and "costs of the action" to the prevailing plaintiff. 29 U.S.C. § 216(b).[1] The Sixth Circuit has explained that this fee-shifting provision insures "effective access to the judicial process" for employees with wage and hour grievances. *United Slate, Tile and Composition Roofers, Damp and Waterproof Workers Ass'n, Local 307 v. G & M Roofing and Sheet Metal Co., Inc.*, 732 F.2d 495, 502 (6th Cir. 1984).

The Sixth Circuit has held that, in determining what constitutes a "reasonable" fee award, "[c]ourts should not place an undue emphasis on the amount of the plaintiff's recovery because an award of attorney fees . . . encourage[s] the vindication of congressionally identified policies and rights. Indeed, we have upheld substantial awards of attorney's fees even though a plaintiff recovered only nominal damages." *Fegley v. Higgins*, 19 F.3d 1126, 1134–35 (6th Cir. 1994) (internal quotations and citations omitted). A "reasonable" fee is one that is "adequately compensatory to attract competent counsel yet which avoids producing a windfall for lawyers." *Adcock-Ladd v. Sec'y of the Treasury*, 227 F.3d 343, 349 (6th Cir. 2000).

---

[1] Likewise, Ohio Revised Code § 4111.10(A) provides that in a case involving unpaid overtime, the employer is liable "for costs and reasonable attorney's fees as may be allowed by the court."

4

The "starting point" is a "lodestar" calculation, defined as "the product of the number of hours reasonably spent on the case by an attorney times a reasonable hourly rate." *Moore v. Freeman*, 355 F.3d 558, 565 (6th Cir. 2004). There is a "strong presumption" that a prevailing plaintiff's attorney is entitled to the lodestar fee. *Adcock-Ladd*, 227 F.3d at 350. The court may adjust that amount up or down, depending on the circumstances. *Moore*, 355 F.3d at 565; *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983). The degree of success obtained is the most critical factor in determining the reasonableness of a fee award. *Hensley*, 461 U.S. at 436.

In reducing a lodestar amount, a court "may attempt to identify specific hours that should be eliminated, or it may simply reduce the award to account for the limited success." *Id.* at 436-37. Nevertheless, "modifications [to the lodestar] are proper only in certain rare and exceptional cases, supported by both specific evidence on the record and detailed findings." *Adcock-Ladd*, 227 F.3d at 350 (internal quotations omitted).

Factors to be considered in determining a reasonable fee include:

(1) the time and labor required; (2) the novelty and difficulty of the question; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorney; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

*Hensley*, 461 U.S. at 430 n.3 (citing *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717–19 (5th Cir. 1974)). Many of these factors, however, are subsumed in the lodestar calculation itself. *Id.* at 434 n.9.

III. **Analysis**

Plaintiffs' attorneys, Matthew Coffman and Daniel Bryant, seek a total of $172,288.01, consisting of $165,552.50 in attorneys' fees, and $6,735.51 in costs and expenses.[2] Airstream does not object to the request for costs and expenses, but urges the Court to reduce the attorneys' fee demand by 50%.

A. **Attorneys' Fees**

1. **Lodestar**

In determining what constitutes a reasonable attorney's fee, the Court's first task is to determine the lodestar amount, *i.e.*, the reasonable hourly rate multiplied by the number of hours reasonably expended.

---

[2] The Court notes that Plaintiffs' motion is internally inconsistent as to the amount of attorneys' fees requested. At several points, Plaintiffs request $164,837.50 in fees, plus $6,735.51 in costs, for a total of $171,573.01. Doc. #69, PageID##932, 938, 943. Nevertheless, in the summary, Plaintiffs request $165,552.20 in attorneys' fees, plus costs. *Id.* at PageID#950. The discrepancy appears to arise from Attorney Bryant's calculations. In his Declaration, he states that his hourly rate is $275.00 and that he spent 287.9 hours on this case, resulting in a lodestar amount of $78,457.50. Doc. #69-2, PageID#973. However, 287.9 x $275.00 is actually $79,172.50. This is the amount that is included in the summary, Doc. #69, PageID#950. Because this larger sum is mathematically correct, the Court will use it instead. This leads to a total request of $172,288.01 instead of $171,573.01.

6

A reasonable hourly rate is determined by the "prevailing market rate," defined as "that rate which lawyers of comparable skill and experience can reasonably expect to command within the venue of the court of record." *Adcock-Ladd*, 227 F.3d at 350. Attorney Matthew Coffman seeks an hourly rate of $350.00. He has been in practice for ten years and specializes in employment litigation. Doc. #69-1. Attorney Daniel Bryant seeks an hourly rate of $275.00. He has been in practice for six years and also specializes in employment litigation. Doc. #69-2. Airstream has not objected to the hourly rate sought by either attorney. The Court finds the hourly rates of $350.00 for Mr. Coffman and $275.00 for Mr. Bryant are reasonable and are in line with the prevailing local market rates for attorneys with comparable skill and experience.

Attorney Matthew Coffman spent 246.8 hours on this matter through January 30, 2019, the date of the acceptance of the Offer of Judgment. Doc. #69-1, PageID#962. During the same time period, Attorney Daniel Bryant spent 287.9 hours on this case. Doc. #69-2, PageID#973. Plaintiffs' counsel has submitted a supporting Declaration of Attorney Greg Mansell, an employment law attorney with ten years of experience, who opines that the hours spent on this case were "reasonable and necessary considering the issues, experience of counsel, and proceedings." Doc. #69-4, PageID#982.

Airstream has not argued that the number of hours Plaintiffs' counsel spent working on this case was excessive. As Plaintiffs note, this was fairly complex litigation, involving individual and class claims brought under a variety of statutes.

7

It also involved significant discovery. Moreover, Plaintiffs' Emergency Motion for a Protective Order, filed in response to actions Airstream took after Plaintiffs sought conditional class certification, led to protracted litigation and numerous lengthy conference calls. The Court finds that Plaintiffs' counsel expended a reasonable number of hours on this litigation.

This equates to a lodestar amount of $86,380.00 for Attorney Coffman ($350 x 246.8), and a lodestar amount of $79,172.50 for Attorney Bryant ($275 x 287.9), a total of $165,552.50. As previously noted, there is a "strong presumption" that Plaintiffs' counsel is entitled to their lodestar fee. For several reasons, however, Airstream urges the Court to reduce the requested fee award.

### 2. Adjustments to Lodestar

#### a. Hours Billed January 28-30, 2019

Although the Offer of Judgment provides that Plaintiffs are entitled to fees and costs "accrued as of the date of the acceptance of [the Offer of Judgment]," Doc. #64-1, PageID#449, Defendant Airstream now asks the Court to disallow attorneys' fees for work performed by Plaintiffs' counsel between January 28, 2019, when Coffman drafted Plaintiffs' Acceptance of the Offer of Judgment, and January 30, 2019, when the Offer was actually accepted.

More specifically, Airstream objects to time billed to prepare for, and conduct, the depositions of Airstream's 30(b)(6) witnesses Mark Leksan and Jeannie Lloyd, conducted the same day Plaintiffs accepted the Offer of Judgment. Airstream notes that, at Lloyd's deposition, counsel interrogated her at length

about Airstream's time clock procedures, an issue directly related to the new lawsuit, *Satterly v. Airstream*, 3:19-cv-32, that counsel filed the day after the Offer of Judgment was accepted in *Funk*.

The Court notes that Plaintiffs do not deny that some of the billable hours between January 28 and January 30 may be more properly chargeable to the *Satterly* suit. They argue only that Airstream is contractually bound by the express terms of the Offer of Judgment, which provides for the allowance of fees accrued through the date of the *acceptance* of that Offer.

That contract, however, is limited to "reasonable" fees accrued through that date. In the Court's view, Airstream has properly questioned the reasonableness of billable hours that appear to be more closely related to the *Satterly* lawsuit. It can reasonably be inferred that, in order to be fully aware of all relevant facts, Plaintiffs wanted to complete the 30(b)(6) depositions of Leksan and Lloyd before deciding whether to accept the Offer of Judgment in *Funk*. The Court has reviewed Mark Leksan's deposition, Doc. #67, and finds that the topics covered are limited to the relevant issues in *Funk*. Accordingly, Plaintiffs are entitled to recover fees related to his deposition and the preparation for it.

Most of Jeannie Lloyd's deposition, Doc. #68, is also focused on issues in the *Funk* lawsuit. However, a small portion of her deposition, Doc. #68, is directed to Airstream's "rounding rules" and time clock procedures, questions more closely related to the *Satterly* lawsuit. Lloyd's deposition lasted approximately four hours. After reviewing the deposition transcript, the Court finds that

approximately one hour of that time is more properly attributed to the *Satterly* lawsuit. Accordingly, the Court will disallow one hour of fees charged by Attorneys Coffman ($350.00) and Bryant ($275.00) for conducting Lloyd's deposition, a total of $625.00.

It cannot be determined from the billing records how much, if any, of the time spent preparing for Lloyd's deposition might be more properly attributed to *Satterly*. However, Airstream notes that time clock procedures were outside the scope of designated 30(b)(6) topics. In all likelihood, Plaintiffs' counsel did not prepare questions about the time clock procedures, but rather stumbled into this line of questioning during the deposition and decided to explore it further. Accordingly, the Court declines to deduct additional fees billed for preparation for Lloyd's deposition.

The Court will reduce the lodestar amount of $165,552.50 by $625.00, bringing the adjusted amount to $164,927.50.

### b. Other Adjustments to Lodestar

Airstream next asks the Court to reduce the lodestar amount by 50% so that the fee award is more proportionate to the clients' actual recovery and does not result in a windfall for Plaintiffs' counsel. Airstream maintains that the amount sought by Plaintiffs' counsel is substantially more than what is needed to attract competent counsel in this judicial venue for a similar case.

The Court rejects Airstream's arguments. Again, the Court must start with the "strong presumption" that Plaintiffs' counsel is entitled to the adjusted lodestar

amount of $164,927.50. In the Court's view, Airstream has failed to present a sufficient legal basis to overcome that presumption, particularly within the unique context of this FLSA case.

In support of its request for a 50% reduction, Airstream relies, in part, on the Declaration of Attorney David C. Greer. Greer opines that an appropriate award in this case would be $60,356.00 in attorneys' fees, plus costs and expenses. Doc. #72-1, PageID#1010. His suggested fee award would consist of $39,018.00 for hours spent on Funk's individual claims (equal to one-third of her recovery), plus $21,338.00 for hours spent on the three class claims (equal to the result achieved for the class). *Id.*

Greer notes that Sandra Funk recovered $117,053.00 on her individual claims under the FMLA and COBRA. Although Greer did not review a copy of her fee agreement with counsel, he noted that the motion for attorneys' fees indicates that there was a contingent fee contract. Assuming that the contingent fee would be one-third of her recovery, he determined that an appropriate attorneys' fee on her individual claims would be $39,018.00. He maintains that, because the agreed-upon fee is defined by contract, that contract should be honored. *Id.*[3]

---

[3] Greer also suggests that the bulk of billable hours was spent on Funk's individual claims, but Plaintiffs' counsel refutes this. Billing records show that only 14.5% of the hours billed were attributable to her individual claims. Doc. #74, PageID##1023-24.

11

The contingent fee agreement at issue, however, actually provides that Plaintiffs' counsel will receive *forty* percent of the ultimate gross settlement or judgment. However, if attorney's fees are awarded as the result of a fee-shifting statute, counsel is entitled to those fees, which would be deducted from any amount owed by the client under the fee agreement, with the client responsible for any balance due under that agreement. Doc. #74, PageID#1017 n.2. Given that these attorneys' fees are being awarded as the result of a fee-shifting statute, counsels' fee request does not run afoul of the actual contract.

Moreover, the Sixth Circuit has held that "a §216(b) fee award should not be limited by a contingent fee agreement." *United Slate*, 732 F.2d at 504. The inherent risk of not recovering anything when agreeing to represent a client on a contingent fee basis must be taken into consideration when determining the reasonableness of a request for attorneys' fees. Accordingly, the Court rejects Mr. Greer's opinion concerning the impact of the contingent fee agreement on the reasonableness of the fee request.

Airstream next argues that a fee reduction is warranted based on the limited success achieved by Plaintiffs' counsel with respect to both Funk's individual claims and the class claims. Airstream concedes that Plaintiffs prevailed on each of the six claims asserted, but argues that the Offer of Judgment did not provide all of the relief requested in the First Amended Complaint.

For example, Airstream notes that, although Funk obtained money damages on her individual claims, she did not obtain the injunctive or declaratory relief that

she originally requested. Airstream argues that this justifies a reduction in the fees sought. *See Autrey v. Food Concepts Int'l, LP*, No. 2:13-cv-131, 2017 U.S. Dist. LEXIS 46693 (S.D. Ohio Mar. 29, 2017) (reducing fee request of $124,630 by 50% where plaintiff accepted $1,100 offer of judgment which did not include all types of relief sought in complaint). By way of distinction, Plaintiffs maintain that, in the settlement, Funk "likely receiv[ed] in excess of 100% of [what] she would have received at trial for her individual claims under the FMLA and COBRA." Doc. #69, PageID#945.

With respect to the value of the benefit rendered to the class, Airstream notes that, of the 1047 putative class members who received notice, only twenty joined Funk in the collective action. Those twenty-one class members then split the $21,338.00, resulting in individual awards of just slightly more than $1,000.00. Airstream argues that when this amount is compared with what Plaintiffs sought to achieve, it is clear that "Plaintiffs' counsel did not achieve a benefit for the vast majority of the class for which they sought certification." Doc. #72, PageID#998. Airstream notes that, in *Snide v. Discount Drug Mart, Inc.*, No. 1:11-cv-244, 2013 U.S. Dist. LEXIS 165584, at *30 (N.D. Ohio Oct. 30, 2013), the court reduced a fee request by 50% where Plaintiffs initially sought to certify a statewide class of 1700 employees, but succeeded in conditionally certifying a much smaller class into which only four plaintiffs opted in.

Under the unique circumstances presented here, Airstream's arguments for a reduction of the adjusted lodestar, based on limited success, are not persuasive.

13

For several reasons, the fact that Plaintiffs' counsels' fee request is somewhat disproportionate to their clients' recovery is of little import. Given the nature of FLSA claims, where the amount of unpaid wages is often small, this will often be the case. As the Sixth Circuit noted in *Fegley*, fee awards "further[] the objectives of the FLSA by penalizing an employer who neglected to pay an employee overtime" and by "encourag[ing] employer adherence to the mandates of the FLSA in the future." 19 F.3d at 1135.

In FLSA cases, courts often approve fee awards that are much larger than the clients' recovery. *See, e.g., Fegley*, 19 F.3d at 1135 (approving fees five times in excess of recovery); *Macklin v. Delta Metals Co., Inc.*, No. 2:08-cv-2667, 2011 WL 13070420 (W.D. Tenn. July 6, 2011) (approving fee award of $48,802.02 even though plaintiff's recovery was only $300.15); *Abdelkhaleq v. Precision Door of Akron*, No. 5:07cv3585, 2010 WL 395236 (N.D. Ohio Jan. 25, 2010) (approving $30,470.10 in attorney fees even though plaintiff was awarded only $3,948.96 in damages); *Brantingham v. Emergency Servs., Inc.*, No. 2:16-CV-1169, 2017 WL 5175866, at *1 (S.D. Ohio Nov. 8, 2017) (approving $35,112.50 in fees even though client was awarded only $13,168.63 in damages).

Under the circumstances presented here, the Court finds that, even though the class was awarded only $21,338.00 in damages, Plaintiffs' counsel should not be penalized for this. The small damages award is directly related to the small class size. Plaintiffs blame both of these on Airstream's preemptive conduct in

14

sending letters and checks for unpaid overtime to the putative class members immediately after Plaintiffs sought class certification.

Human Resources Director Jeannie Lloyd testified that, as early as February or March of 2017, she questioned whether Airstream was FLSA-compliant with respect to factoring bonuses into its overtime pay. Doc. #68, PageID#676. However, it was not until December of 2017, that she fully confirmed her suspicions. *Id.* at PageID#672, 678. It was agreed that they would address the problem after Mark Wahl got back from vacation in February of 2018. *Id.* at PageID##708-09.

On March 1, 2018, Plaintiffs filed their First Amended Collective and Class Action Complaint, asserting overtime violations based on Airstream's failure to include bonuses in its overtime pay. On March 6, 2018, Plaintiffs moved to conditionally certify the class. Two days later, before the class was certified or notices were sent to putative class members, Airstream preemptively sent letters to the putative class members citing an "inadvertent payroll error," and paid them $333,658.78 in unpaid overtime. It is Plaintiffs' theory that, in doing so, Airstream actively discouraged its associates from joining the lawsuit.

Plaintiffs argue that the $333,658.78 is only a portion of what the putative class members were actually entitled to receive under the FLSA. For example, Airstream did not include any liquidated damages in its calculations. Plaintiffs note that the $22,338.00 awarded to the twenty-one individuals who did join the

15

lawsuit was *in addition to* the unpaid overtime that those individuals had already received from Airstream.

The Court agrees with Plaintiffs that, in considering the value of the benefit rendered by counsel to the putative class members, it is appropriate to look beyond the $22,338.00 class award. Under the circumstances presented here, it is appropriate to also consider the $333,658.78 in unpaid overtime that Airstream paid to its associates after Plaintiffs moved to certify the class, and the fact that Airstream changed its policies and practices with respect to factoring bonuses into overtime calculations. Evidence shows that Airstream was aware of the FLSA violation months before the lawsuit was filed, but took no action to correct the problem until after Plaintiffs moved for class certification. For these reasons, despite the small class size and the small class damages award, the Court finds no basis to further reduce the adjusted lodestar amount. Under the circumstances presented here, the adjusted lodestar amount is reasonable, *i.e.*, "one that is adequately compensatory to attract competent counsel yet which avoids producing a windfall for lawyers." *Adcock-Ladd*, 227 F.3d at 349. Accordingly, the Court awards Plaintiffs' counsel $164,927.50 in attorneys' fees.

### B. Costs

Plaintiffs' counsel also seeks reimbursement of $6,735.51 in out-of-pocket costs and expenses related to the suit, including depositions, transcripts, postage and investigatory costs. Airstream has not objected to this request. The Court

deems the request to be reasonable. Accordingly, Plaintiffs' counsel is awarded $6,735.51 in costs and expenses.

IV.  Conclusion

For the reasons set forth above, the Court SUSTAINS IN PART and OVERRULES IN PART Plaintiffs' Counsel's Motion for an Award of Attorneys' Fees and Reimbursement of Costs, Doc. #69. The Court AWARDS $164,927.50 in attorneys' fees and $6,735.51 in costs, for a total award of $171,663.01.

Judgment shall be entered accordingly.

Date: September 23, 2019

*(signed)*
WALTER H. RICE
UNITED STATES DISTRICT JUDGE